## Nuckolls v. Irwin.

**Judgments**: *Their entry and effect.* When a judgment is once entered of record, it must stand as the judgment of the Court until vacated, modified, or disposed of by the process prescribed by law. Entering another judgment is not one of them.

**Transcripts**: *Notes of clerk.* A clerk of a District Court should not insert in his transcript of proceedings therein a note of his own explanatory thereof. If he does, such note will be disregarded.

——: *The form* of transcripts to be filed in this Court prescribed.

——: *Decisions.* If an entry in the journal recite a trial and a finding by the judge, and run in the usual form of a judgment, it will not, simply because signed by a judge other than the one holding the term, be treated as a finding and decision merely; and a judgment in form at a subsequent term cannot be entered thereon. If it is a decision, it is a judgment.

This was a motion to dismiss an appeal from a judgment of the District Court for Otoe County. The action was for the specific performance of a contract. At the term of the Court being held on the seventeenth day of August, 1868, Mr. Justice Lake, who was assigned to hold the District Courts in the second district, presided. Otoe County is in the first district, to which Mr. Chief Justice Mason was assigned. The statute authorizes one judge to hold courts for another. On that day the cause was tried before Judge Lake, and by him taken under advisement. A note of this circumstance was entered in the journal, as follows: —

"*S. F. Nuckolls et al.*
v.
*John Irwin et al.*  }.

" And now, on this day, this cause came on to be heard

by the Court, and is submitted and taken under advisement by Justice Lake."

The March term, 1869, was held by Chief Justice Mason ; and the transcript filed in this Court showed the following : —

" And afterwards — to wit, at the March term, to wit, March 27, 1869 — the following proceedings were had and done, Hon. O. P. Mason presiding : —

"*Stephen F. Nuckolls et al.* ⎫
        v.      ⎬
   *John Irwin et al.*    ⎭

" Be it remembered, that heretofore — to wit, at the adjourned term of this Court, held on the seventeenth day of August, 1868 — this cause came on to be heard before the Hon. George B. Lake, Judge, who was then present, holding said Court, upon the pleadings and proofs of the respective parties, and was argued by counsel ; and, for the purpose of more fully considering the questions involved, the case was, by consent of counsel, taken under advisement by the Court.

" And now, here at this term of the Court, on consideration of the premises, and the Court finding all the equities of the case with the defendants, it is considered and adjudged that the petition of the said plaintiffs be dismissed at the costs of the said plaintiffs ; and that said defendants go hence without day, and recover of the said plaintiffs their costs to be taxed, and that execution issue therefor. — By the Court : George B. Lake, Judge."

At the October term, 1870, Chief Justice Mason presiding, another entry was made in the journal, as follows : —

"*Stephen F. Nuckolls et al.* ⎫
        v.      ⎬
   *John Irwin et al.*    ⎭

" And now, at this day, the fact that no judgment has

been entered by the Court in this cause having been duly called to the attention of the Court, in open Court, by the above-named plaintiffs, and the Court, having examined the records herein, did, at the request of the said defendants, temporarily pass said cause; and afterwards the Court, being fully advised in the premises, and having listened to said defendants, doth, in accordance with the finding heretofore entered of record in said cause, consider and adjudge that the said petition of the said plaintiffs be, and the same is hereby, dismissed at the costs of said plaintiffs; and, further, that the above-named defendants go hence without day, and that they recover of said plaintiffs their costs herein to be taxed, and that execution issue therefor: to which plaintiffs excepted, and from which judgment said plaintiffs prayed an appeal, which is accordingly allowed; and to all which orders of the Court, the said defendants, by their attorney in open Court, duly except."

The plaintiffs brought the case here by appeal.

*C. W. Seymour* and *W. W. Wardell*, for the defendants, moved the Court to dismiss the appeal; insisting, —

1. That the journal entry of October, 1870, was not a judgment, because judgment was entered at the March term, 1869, and could not be displaced by a subsequent entry.

2. That the statute required notice of appeal to be served within one month from the entry of the judgment; and more than two years had elapsed from the entry of the judgment in the case.

3. That the entry of October, 1870, was a device to avoid the limitation upon the right of appeal imposed by the statute.

NUCKOLLS *v.* IRWIN.

*J. H. Croxton* and *John F. Kinney,* contra, insisted that the entry of March 27, 1869, was not a judgment of the Court, because Judge Lake was not present, and the same was not passed by Judge Mason.

CROUNSE, J.

A glance at this record raised no doubt in my mind that this appeal must be dismissed. The Court, however, not being unanimous in this view, and the motion being given the additional importance of a full day's argument by able counsel in support of the appeal, it is proper that the views of the majority be briefly stated. No question is made but that the District Court had jurisdiction of the persons and subject-matter involved in this action. The issues being complete, the trial of the cause came regularly on at the August term of that Court in the year 1868, and was submitted and taken under advisement by Justice Lake. Otoe County is one of the counties of the first judicial district, to which Chief Justice Mason is assigned to hold terms of the District Court. What brought Justice Lake from his district (the second) into Otoe County, we will not stop to inquire. The statute permits district judges to interchange and hold each other's courts (*sect.* 16, *page* 50, *R. S.*) ; and we will presume he was rightfully there. The record showing Justice Lake in possession of the case, we find, that at the March term, 1869, an entry was made on the journal of the same Court, reciting the trial, submission of the cause, and the taking of the same under advisement by the Court by consent of counsel, the finding or decision of the Court, and its judgment thereon in favor of the defendant. With so complete a record, showing a cause over which the Court had full jurisdiction, — its trial, submission, finding,

and judgment, — we would suppose the case concluded in that Court; and are not a little surprised to find the further entry appearing on the record, made more than a year and a half subsequently, several terms of the same Court having intervened. That entry itself is a little singular. It was made against the protest of the defendants. The decision was favorable to them; and they were satisfied with one judgment in the case, or at least with the one they supposed they had. This entry itself betrays a suspicion at least, on the part of the plaintiffs' counsel, that what already appeared on the records might be mistaken for a judgment; or why this unnecessary recital, that " now, on this day, the fact that no judgment had been entered by the Court in this cause having been duly called to the attention of the Court, in open Court, by the above-named plaintiffs " ? The entry shows, further, that the Court, treating the previous entry as a " finding," pronounces its judgment accordingly. And, in point of form, I must confess it is no improvement as a judgment upon that which is denominated a " finding." A judgment is the determination or sentence of the law. The apt language is, " it is considered by the Court," — " *consideratum est per curiam.*" 3 *Black. Com.*, 396. This appears in both. We look in vain for any explanation for this peculiar proceeding, unless we receive the suggestion that was made at the argument, that an attempt was made to take an appeal from the judgment of March, 1869, which was attended with some fatal irregularity; and the idea of having a judgment entered anew was conceived. A reference to the Supreme-Court calendar for the last July term shows a cause of the same title of this here, but which was withdrawn. Taking into consideration this circumstance, with the fact that an appeal was taken from this last entry within a few days after its

NUCKOLLS *v.* IRWIN.

appearance on the journal of the District Court, it is difficult to resist the conclusion that this is an attempt to do that by indirection which could not be done directly. There is no power in either the District or Supreme Court to enlarge the time for taking appeals; and any effort to attain the same end by an evasion of the provisions of the statute is equally unlawful. *Humphreys* v. *Chamberlin*, 11 *N. Y.*, 274. But that is not a question legitimately arising on the record: so I will pass to a brief notice of the ingenious arguments advanced by counsel in support of this appeal; and I may say of them, that while very ably advanced, resting largely on ingenuity, they lead to as many different conclusions as there are advocates urging them. If I fully comprehend counsel, one contends that judgments may be multiplied at pleasure; and that the last entered may be appealed from, especially when the Court assumes to declare there is no judgment, as is done here: while the other insists that there was no authority in the Court of March, 1869, to render judgment; that, if there was no authority to render judgment, there was none to give a decision; and that, therefore, the judgment sought to be based upon it in October, 1870, is equally worthless; and that the case must be returned to the Court below for judgment: while the Court at the October term, 1870, seems to have concluded that there was just enough authority in the Court of March, 1869, to render a decision, but not a judgment, in the case.

As to the first of these positions, it was unnecessary to argue at length, or cite authority in support of the general proposition, that a judgment of a court of competent authority must be recognized till set aside or reversed. But the counsel for the other side invoke this same principle, and claim that the judgment of March, 1869, has never been set aside, or disturbed in any way:

NUCKOLLS *v.* IRWIN.

so we are not to settle the force of the judgments. But, as there can be but one final judgment in a cause, we have the entirely different question, Which is *the* judgment in the case? That seems to be not a very difficult question. When a judgment is once entered of record, it must stand as the judgment until it is vacated, modified, or disposed of by some means provided by law: entering additional judgment entries is not one of them. A case regularly brought into Court is presumed to be attended at regular terms of Court by the attorneys having it in charge; and all proceedings of the Court in reference to them, in the absence of fraud, will be binding on the parties, whether present or not. But, when judgment is entered, they may cease their attention. The further proceedings in the case, by petitions to vacate or modify judgment, or on error to this Court, must be on proper notice provided by statute. *Chaps.* 1 *&* 2, *Tit.* 16, *Code.* If to enter additional judgments in the same cause is a regular proceeding, I see no necessity for notice; and, when a party once obtains judgment, he must ever after stand guard over it, lest some enterprising attorney should, in after-years, enter another judgment, so as to bring the party into an appellate court. This position will not stand. We will go to the next, — that there was no authority in the Court of March, 1869, to render judgment in the case. This is declared on the strength of the note of the clerk, introducing into the record sent here the words, " Hon. O. P. Mason presiding," just before the entry of March, 1869. This is made the text upon which are based many interesting speculations, — as to the appearance of a court with two district judges; what business Justice Lake had out of his own district, rendering judgments in Otoe County, where Hon. O. P. Mason was presiding; and the like. Had the record

Nuckolls *v.* Irwin.

sent here been made up in the usual way, and in accordance with the directions of the statute, and after approved precedents, such discussions, which are not calculated to add to the dignity of courts and the credit which should attach to their proceedings, could not have arisen; nor should this Court entertain questions arising by insinuation, which it is evident could not have been supported if made directly, and brought properly into the record, with all the facts attending them. A proper record, in its caption, as introduction, should show a competent court to render the judgment sought to be reviewed or used; the constitution of the Court at the time of its rendition, as " Pleas before his Honor," &c., showing a term of the Court regularly held, convened at the proper place, and presided over by a judge having authority. This is followed by a minute of each step taken, as the filing of the respective pleadings, the journal entries made in the cause, and concluding with the judgment. There is no more propriety in interjecting into the note of the clerk, introducing the journal entries into the complete record, the remark that this or that judge presided, than there would be to show that he presided in Otoe County, rather than in Iowa, where he would have had no jurisdiction. *Vide sect.* 677, *Code,* also form for complete record. *Nash. Prac.* 724; *Rules of Sup. Ct. Iowa,* 1870, *sect.* 100. In this regard, this record, differing from those usually sent here, and being unlike those which come from the same county, I can but presume this addition was made in that case by direction, in order to form the basis upon which to raise some question as to the competency of the Court. If, in good faith, counsel thought that the entry was a nullity, why not, in the year and a half, have moved to expunge it? Then the Court could have passed upon it, and all the facts show-

ing jurisdiction been brought up in a bill of exceptions.
The record, eliminating that which has no business here,
shows a case regularly brought into a court of compe-
tent jurisdiction, presided over by a judge fully qualified
to sit, a trial had before him as the Court and the judg-
ment, and the judgment of the Court given; and it
would be unbecoming us to tolerate any attack upon
its jurisdiction, or the regularity of its proceedings, by
any gratuitous comments of the clerk. *Omnia præsu-
muntur solenniter esse acta.* What authority there is for
making the second judgment entry based on the record
of the first, I cannot discover. The Court, prefacing
its judgment with the remark that no record of judg-
ment appears, does not destroy the fact, if one did
appear. We will suppose the Court to have overlooked
it, or have been misled by counsel. To call a judgment
a finding makes it none the less a judgment. A sum-
mons is not an execution, nor an almanac a pleading,
even if called so on authority of a court. So I am at
a loss to know how the Court of March, with either
Justice Mason or Justice Lake, or both, if you please, had
enough authority to pronounce a decision, and still fail
in its vitality to direct a judgment upon it. The record
shows that here at this (March) term of Court, " on con-
sideration of the premises, and the Court finding all the
equities of the case with the defendants, it is consid-
ered," &c., — the finding and judgment of the Court
coming at the same breath. Unlike the provisions of
the New-York Code, where judgments are not necessa-
rily entered in term time, and where, the trial being had
to the Court without a jury, its decision is given in
writing, and filed with the clerk within twenty days,
here the decision is the act of the Court done in term.
If Justice Lake was present at the March term to an-
nounce his decision, he was equally there for the pur-

Nuckolls *v.* Irwin.

pose of directing judgment of the Court upon it. If his actual presence at the term was waived, and by consent, as is frequently the case, his decision was entered as though present, there is equal authority for entering the judgment. If Hon. O. P. Mason presided exclusively at the March term, the records were completely under his control. The clerk makes entries of orders and judgments only under direction of the Court. 887 *&* 889 *sects., Code.* These entries are to be read over from time to time in open Court, and, when correct, shall be signed by the judge. *Sect.* 17, *chap.* 13, *R. S.* Evident mistakes in the record can subsequently be corrected. *Sect.* 21, *Id.*

So there can be no suggestion that this record found its way improperly on the record. If Judge Lake was not present, Judge Mason permitted the judgment to be entered, followed by the addition, "By the Court, — George B. Lake, Judge;" showing by that, that, for that case, Judge Lake, and not Hon. O. P. Mason, presided. The statute allowing judges to interchange does not compel them to do so an entire term; but it may be for a week, a day, or for the few minutes necessary to announce a decision and direct a judgment. Hon. O. P. Mason may have presided generally at that term; but, whatever the fact may be as to Judge Lake's actual presence, the record shows well enough that the judgment entered at the March term was one entered by a competent court, George B. Lake being the judge thereof, leaving this attempt to confound the records to stand. We will not indulge any presumptions against the regularity of proceedings in courts of record. The appeal must be dismissed.

Lake, J., concurred.

Mason, Ch. J., dissenting.

Nuckolls *v.* Irwin.

I dissent from the opinion of the Court. I do not think the reasoning of the majority of the Court sound, nor the result reached law. I shall state my reasons briefly.

Conceding, for the purpose of the argument, that the entry of Aug. 17, 1868, did not show upon its face that it was not a judgment of the Court, it is still clear, from this record, that it was effectually displaced by the entry of Oct. 10, 1870. The last entry shows that the first entry, purporting to be a judgment, was brought to the attention of the Court; that an inquiry into the circumstances under which the clerk recorded it was had; and that the result of that inquiry was, that the clerk recorded it by mistake, and that the counsel of both parties was fully heard in the matter. It would have been more regular for the defendants to file a motion to correct the mistake, and take an order to that effect upon the hearing of the motion. Instead of that, a motion *ore tenus* was made, to which the defendants appeared, without objection to the form of the proceeding; and the matter was heard as fully and fairly, and with all the means of arriving at the truth and doing justice, as if a more formal procedure had been had. I think the criticism of the majority upon the record very trifling. It puts the form before the substance, the mode of procedure before right and justice.

The case stands, then, in the attitude of one in which a party moves the Court to correct a mistake of the clerk in entering a judgment; upon the hearing of which motion, the Court finds that such mistake has been made, and proceeds to correct it. This the Court was authorized to do by sections 602 and 604 of the Code, which are as follows: " Sect. 602. — A District Court shall have power to vacate or modify its own judgments or orders after the term at which such judgment or order was

NUCKOLLS *v.* IRWIN.

made. . . . Third, for mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order."

" Sect. 604. — The proceedings to correct mistakes or omissions of the clerk, or irregularity in obtaining a judgment or order, shall be by motion, upon reasonable notice to the adverse party or his attorney in the action."

Acting under this authority, the District Court heard this motion. And this record shows that an entry of judgment was made upon the journal by the clerk, without the intervention of the Court; and the District Court so found. And the record shows that this was a correct finding, as I shall explain hereafter. But whether it was or not is not now the question. The Court had the authority to inquire into the matter: it did so, and it found the fact. Its finding and its order thereon is final and conclusive until reversed. We are not here asked to review or reverse it, but to ignore it. To state the case is to determine it.

Much has been said about the mischief which would result from permitting a District Court to set aside a judgment, and enter another, thereby extending the time for appealing; and especially of setting aside a judgment in the absence of the parties, and without their knowledge. A great deal of this is very true ; but it does not apply to this case. The record in this case shows that the parties had notice, did appear, were heard, the Court duly considered the case, found a certain state of facts, and adjudged accordingly. If objection be made to this course of proceeding, then let the legislature repeal the two sections above quoted. As long as they are the law, we ought to administer them.

A lengthy discourse on the mischief resulting from a

NUCKOLLS *v.* IRWIN.

certain view of the law leads to no very satisfactory result. There are mischiefs in refusing to vacate a judgment entered by mistake, as well as those mentioned in the opinion of the Court. And this case furnishes a good illustration. A cause is heard by the Court: the judge, in the pressure of the business of the term, has not time to consider it so as to reach a conclusion satisfactory to his own mind: he takes the case under advisement; he writes out the result which he has reached; he sends it to some party, — perhaps to another judge holding a succeeding term, perhaps to the clerk, and possibly, as in this case, to the successful party; and then, without the action of the Court, this is recorded in the journal as a judgment, in the absence and without the knowledge of or consent of the unsuccessful party; and the time fixed by law within which an appeal is to be taken passes away. It is said that the parties attend the term at which their cause is determined. Three terms elapsed after this cause was submitted before the decision was made. Were the parties to be supposed to attend all these terms to see that nothing escaped them? or might they reasonably expect to have some notice of a judgment against them? And, if entered without notice, are they to lose their appeal from it? By this means the substantial right of every citizen to be heard in this Court is annihilated, not by any fault or neglect of his, but by a mistake of the clerk. What shall be said of the mischief of such a case?

I have said enough to show that the entry of October was effectual to avoid that of August, and might stop content with this; but I am willing to look farther, and determine from the whole record whether the earlier in date was a judgment final and conclusive, or only a finding of a judge upon which a judgment might, under proper circumstances, be entered. The Constitu-

NUCKOLLS *v.* IRWIN.

tion vests the judicial authority of the State in certain courts and in justices of the peace. A judge of a District Court possesses no judicial authority to render a judgment. An attempt on his part to do so would be futile. He is clothed with authority only as a constituent part of the Court, established and authorized by law. He is not the Court : he is but the presiding officer of the Court. A judgment, when entered, is not his judgment, but that of the Court. It may be entered on his decision ; but his decision is not final : it does not conclude the parties any more than the verdict of a jury. A District Court duly organized must have a judge, a clerk, and a sheriff ; and one is quite as essential as the other. One judge only can sit in the District Court at the same time. The Constitution provides that the judges of the Supreme Court shall be assigned to hold District Courts in their respective districts. Accordingly the legislature assigned Mr. Justice Crounse to the third district, Mr. Justice Lake to the second district, and myself to the first district. It required each to live in the district to which he was assigned. It provided that we might hold courts one in the district of another. Mr. Justice Lake must preside alone in the District Court of his district. When he exchanged with one of his brethren, still he must preside alone : but one judge can sit in the District Court. The whole structure of our judicial system contemplates this arrangement. Were it useful or necessary, I might collect the several provisions of the statute, clearly indicating the same view on the part of the legislature. These are familiar principles : they are known to the whole profession, and are almost maxims in the law. I mention them here, not as new, but to recall them to mind ; for, in the light of them, we are able to see very clearly what is the right of the case.

### NUCKOLLS v. IRWIN.

This record shows that Judge Lake was holding the District Court for Otoe County when he heard this case. The parties agreeing, he took the papers to his home to consider them; and the term was adjourned. Several terms intervened without a decision. In August, 1868, the Court was in session, Judge Mason presiding. Judge Lake was not present. He could not sit in the Court, for reasons I have already recounted, at the same time Judge Mason was presiding. A paper is then presented to the clerk in the form of a decree, signed by Judge Lake. As his decision, it had no force or value whatever. He was not present, and was not a judge in that Court then sitting, any more than one of the counsel. He had no authority, even, to render a decision; but the Court, as constituted at the time, might adopt his views, and render a decree accordingly. The paper was given to the clerk, who, mistaking its character, placed it upon the journal without the action of the Court. This gave it no force or effect as a judgment. The clerk cannot render a judgment: a record of judgment made by him, without the order of the Court, would be void. Judge Lake not being present, and not sitting in the Court, the clerk could not render a valid judgment: the attempt to do so would be a nullity. The judgment, to be valid, should have been the judgment of the Court then sitting. But such was not the fact; and the record shows it: it was the finding and the judgment of Judge Lake, an individual.

It is true, if the entry were not signed by Judge Lake, we should infer from it that the decree was the act of the Court: but even then it would be competent for the District Court to inquire what the fact was; and, if it discovered on its journal an entry of a decree which it did not render, it would only do what was its plain duty in setting it aside. And this is what was done in

NUCKOLLS *v.* IRWIN.

October. As I have already said, inquiry was made into the fact, and the plaintiffs and defendants appeared and were heard; and it was found that the decree was not the act of the Court, and for that reason it was disregarded, and treated as a nullity. I am unable to see how any other course could have been pursued.

The majority in their opinion have criticised the action of the clerk in inserting in the transcript, before the entry of March, 1869, a statement that " Hon. O. P. Mason " was " presiding." At the same time, they say that the transcript should, in its introduction, show before. what judge the proceedings were had. I am unable to see that it is very material whether the name of the judge appears at the beginning or in the middle of the transcript. It is more regular and formal to place it in the introduction; but it is not necessary. It is enough if it duly appear; and why find fault with the clerk, and impute to him and to parties and counsel some ill-flavored design in making it appear? If causes are to be adjudged in this Court on the mere formality of transcripts filed therein, few cases will ever be determined on their merits. Justice is not administered on any such frivolities. It was the duty of the clerk to make this transcript as he did, unless he followed the more usual form. And he only disclosed what the facts were; namely, that a paper signed by Judge Lake, in the form of a judgment, in some way found its way upon the journal of the Court while Judge Mason was presiding therein, and while, necessarily, Judge Lake was not present. And it is these facts being made to appear by the clerk that the majority object to. I think the judgment of October, 1870, the one rightly before us for review, and that the motion to dismiss the appeal should be overruled.

Appeal dismissed.